IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOURNAL PUBLICATIONS, INC. d/b/a Best Companies Group | : : : | No.  1:CV 05-1440 |
| Plaintiff | : : | Judge Jones |
| v. | : : | |
| AMERICAN CITY BUSINESS JOURNALS, INC. d/b/a Dallas Business Journal, Austin Business Journal, and Houston Business Journal | : : : : : : | |
| Defendant | : | |

**ORDER**

**September 23, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion to Dismiss or Transfer ("the Motion")(doc. 6) by the Plaintiff, Journal Publications, Inc. ("JPI" or "Plaintiff") which seeks dismissal of the Complaint (doc. 1) or, in the alternative, transfer of this matter to the United States District Court for the Northern District of Texas.

Federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331.

For the following reasons, the Motion is denied in part and granted in part.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY:**

Plaintiff is a publishing company, incorporated in Pennsylvania, with its principal place of business in Harrisburg, Pennsylvania. Defendant is a publishing company with its principal place of business in Charlotte, North Carolina. Both parties publish magazines and periodicals in several states.

Defendant developed a program to recognize commendable employers in the state of Texas in three of its Texas publications; the Dallas Business Journal, the Austin Business Journal, and the Houston Business Journal ("the Texas Journals"). The Texas Journals have used "The Best Places to Work" mark in the promotion of its program.

Plaintiff has developed a similar program that operates in states other than Texas, entitled "Best Employers in [name of state]." In 2000, Plaintiff used the phrase "Best Places to Work in Pennsylvania" in conjunction with a program in Pennsylvania.[1] Recently, Plaintiff has partnered with *Texas Monthly* magazine and has launched a program entitled "Best Places to Work in Texas." Both parties' programs synthesize surveys and accordingly recognize high-ranking employers. Plaintiff alleges that Defendant plans to publish magazine articles about the

---

[1] We have chosen to describe Defendant's business before Plaintiff's business, but by doing so we in no way are deciding which party first used the phrase "Best Places to Work."

employers and hold a gala awards event in honor of the employers, which is the same method Plaintiff uses to recognize its winners.

On April 5, 2005, Defendant sent Plaintiff a cease-and-desist letter requesting that Plaintiff change the name of its program to "Best Employers in Texas," to which Plaintiff refused.  In a letter dated June 28, 2005, Defendant requested that Plaintiff inform Defendant of its intentions regarding use of the phrase by July 11, 2005 or litigation in Texas courts would ensue.  Defendant alleges that Plaintiff requested more time to comply with Defendant's June 28, 2005 letter and, in response, Defendant delayed filing suit against Plaintiff in Texas.

On July 19, 2005. Plaintiff commenced this declaratory judgment action by filing its Complaint (doc. 1) with this Court.  The Complaint (doc. 1) seeks a declaratory judgment that Defendant does not have enforceable trademark rights in the mark "Best Places to Work." (Rec. Doc. 1 at 6).  On July 25, 2005, Defendant filed a reciprocal suit ("the Texas lawsuit") in the Northern District of Texas Dallas Division, no. 3:05-cv-1468-G, alleging, inter alia, affirmative trademark infringement. The Texas lawsuit encompasses the issues of this action, with the addition of two parties and other claims. On August 11, 2005. Defendant filed the instant Motion, which has been fully briefed by the parties.  The Motion is

therefore ripe for disposition.

**DISCUSSION**

    **A.**    **MOTION TO DISMISS**

The Defendant presents two arguments why we should dismiss this action. First, Defendant argues that Plaintiff should not be protected by the "first filed rule" of the Declaratory Judgment Act because Plaintiff engaged in forum shopping. Second, Defendant argues that we should dismiss this action because the Middle District of Pennsylvania is an improper venue. We shall analyze each of Defendant's arguments in turn.

    **1.**    **"First Filed Rule"**

The Court of Appeals for the Third Circuit adopted the so-called "first filed rule" nearly seventy years ago. See Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941). Under the rule, "in all cases of concurrent federal jurisdiction, the court which first has possession of the subject must decide it." Id. (quoting Smith v. M'Iver, 22 U.S. (9 Wheat.) 532 (1824)). The first filed rule embraces the judicial policy of a single determination of a case or controversy However, the rule is "not a mandate requiring wooden application of the rule without regard . . . forum shopping." EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). The rule is based on principles of comity and equity

among the federal courts, and is not intended to promote "unseemly race[s] to the courthouse." Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F. 2d 746 (7th Cir. 1987). District courts retain the discretion to depart from the first filed rule if circumstances warrant such departure.

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). Plaintiff denies Defendant's allegations that it filed the instant action in the Middle District of Pennsylvania as a result of forum shopping. On the contrary, Plaintiff alleges that it filed this declaratory judgment action to insulate itself from threatened litigation in "any other markets where [Defendant] is using the mark." Accepting Plaintiff's allegations of fact as true, as we must at this juncture, it appears that Plaintiff's motive for filing this declaratory judgment action is not contrary to the policy of the first filed rule. Rather, it appears that Plaintiff filed this action in order to receive streamlined resolution of the legal issue and to avoid litigation in multiple states.

**2.     Improper Venue**

In a federal question case, venue is proper in any judicial district where a defendant resides. See 28 U.S.C. § 1391(b)(1). A corporation is deemed to reside

in any judicial district where it is subject to personal jurisdiction at the time the action is commenced.  See 28 U.S.C. § 1391(c).  Federal district courts have personal jurisdiction over non-resident defendants to the extent permitted in the state in which the federal court sits.  See Fed.R.Civ.P. 4(e).  Under Pennsylvania law, a corporation that carries on a continuous and systematic part of its business in Pennsylvania will be subject to personal jurisdiction in the Commonwealth.  See 42 Pa. Const. Stat. § 5301.

Admittedly, Defendant carries on business in the Commonwealth. (Rec. Doc. 11 at 7).  Plaintiff alleges, and Defendant does not deny, that Defendant publishes both the Pittsburgh Business Times and the Philadelphia Business Journal.  To be sure, both Philadelphia and Pittsburgh are cities located within the Commonwealth and periodical publication is a systematic and continuous business. It is apparent to us that Defendant resides in the judicial district by means of its business operations in the Commonwealth and, by virtue of that business, is subject to personal jurisdiction in the Commonwealth.  Therefore, the Middle District of Pennsylvania is a proper venue in this action.

For the foregoing reasons, Defendant's Motion to Dismiss is denied.

### B.   MOTION TO TRANSFER

In considering a motion to transfer a civil action to another federal district,

the applicable legal standard is "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2005). Factors to be considered in determining a motion to transfer include the plaintiff's choice of forum, interests of the litigants, ease of access to sources of proof, costs of obtaining attendance of witnesses and judicial economy. See Gulf Oil v. Gilbert, 330 U.S. 501, 508-509 (1947) As a general rule, "the plaintiff's choice of venue should not lightly be disturbed." Jumara v. State Farm Ins. Co., 55 F. 3d 873, 879 (3d Cir. 1995).

Today we are forced to depart from the general rule, and in doing so, highlight the importance of judicial economy in the federal courts. As of the entering of this Order, pending before the Federal District Court in the Northern District of Texas is a lawsuit concerning the same parties and same legal issues.[2] For the purposes of judicial economy and in order to guard against conflicting resolutions of the legal issues at hand, the instant action shall be transferred to the Northern District of Texas. By transferring this action, it may be collapsed into the Texas lawsuit, saving both the parties and the courts from the expense of twice litigating the same legal issue.

For the foregoing reasons, Defendant's Motion to Transfer is granted.

---

[2] It is important to note that the Texas lawsuit encompasses more parties than the instant action, as well as more claims. This fact also strongly militates in favor of transfer. Were we to allow the case sub judice to be litigated here, there certainly would be duplicative discovery in these parallel actions, not to mention the distinct possibility of inconsistent verdicts.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (doc. 6) is DENIED.

2. Defendant's Motion to Transfer (doc. 6) is GRANTED.

3. The Clerk shall transfer this case to the District Court for the Northern District of Texas.

s/ John E. Jones III<br>
John E. Jones III<br>
United States District Judge